STATE OF IOWA, Appellant, v. JESSE COLE, Administrator
of the Estate of JOSEPH M. FORD, deceased, Appellee.
And three other cases.

**Estates of insane persons:** STATUTES. The statute of the Thirty-
1  Fourth General Assembly relating to claims against the estates
of insane persons does not affect the liability of such estates for
claims which accrued and were presented prior to the time the
act became effective.

**Exemptions:** PENSION MONEY. Pension money received by a veteran
2  who is an inmate of an asylum for the insane is exempt from
claims by the county or state for his support therein, even though
in the hands of his representatives.

**Insane persons:** MAINTENANCE: RECOVERY BY COUNTY. A county
3  which has never expended anything for the support of an in-
sane person at an asylum for the insane can not recover any-
thing from his estate on that account.

*Appeal from Marshall District Court.*—HON. J. M.
PARKER, Judge.

TUESDAY, JUNE 25, 1912.

PROCEEDINGS to establish claims on behalf of the State
against Jesse Cole, as administrator of the estate of Joseph
M. Ford and Nathan Hackley, deceased, respectively, and
also to establish claims against Jesse Cole as guardian of
Wm. W. Rood, a person of unsound mind, and a like claim

against said Cole as guardian of one Philo Brockway, also a person of unsound mind. The trial court refused to establish the claims, and the State appeals.—*Affirmed.*

*George Cosson*, Attorney General, *C. A. Robbins*, Special Counsel, and *A. C. Daly*, County Attorney for appellant.

*J. A. Traver* for appellee.

DEEMER, J.—Defendant, Cole, is the administrator of the estate of Joseph M. Ford and Nathan Hackley, both deceased, having been appointed as such by the district court of Marshall county, Iowa. He was also duly appointed guardian of the estates of Philo Brockway and Wm. W. Rood, as persons of unsound mind, by the said district court. All of these parties were at one time inmates of the Iowa Soldiers' Home at Marshalltown, Iowa; but Brockway and Rood are now and have been for some years inmates of the insane hospital at Independence, Iowa. Ford and Hackley who were also inmates of the Soldiers' Home were sent to the insane hospital, and there died. The claims were presented by the state against the representative of the parties named and are for support in the hospital for the insane. In answer to these claims, Cole alleged that, as to Ford and Hackley, he had no money, property, or other means in his hands except pension money received from the government of the United States for his intestates, who were veterans of the Civil War and members of Iowa regiments. As to the claims against him as guardian of Brockway and Rood, he alleged that the only property which he had in his hands was pension money belonging to his wards; that they were veterans of the Civil War and members of Iowa regiments. By reason of these facts, he claimed that all the property in his hands was exempt from all debts or claims made by the state.

In a reply filed by the state, it was averred that both Ford and Hackley were nonresidents of the state of Iowa at the time they were admitted to the Soldiers'. Home, and that the funds in the hands of Cole were not exempt either to the deceased or their representative, and the same reply was made to the answers filed by Cole in the guardianship matter. The case was tried upon the following stipulation of facts:

It is agreed and stipulated by and between J. H. Egermayer, attorney for the plaintiffs, in the cases herein stated, and J. A. Traver, attorney for the defendants therein, that the following state of facts shall be considered to be the facts in each case and shall be admitted, as the evidence therein, to wit: That Nathan Hackley served in Company C, Fourth Iowa Infantry, in the Civil War, that he came to the Iowa Soldiers' Home April 19, 1889, was discharged therefrom October 7, 1892, was readmitted November 30, 1892, was discharged again August 7, 1897, was readmitted January 7, 1899, at which time he was a resident of Angola, Ind., was adjudged insane June 3, 1903, and died Thanksgiving Day, 1908. He came to the Iowa Soldiers' Home from Guthrie county, Iowa, and drew $12 per month pension. Joseph M. Ford came to the Iowa Soldiers' Home from Gunnison, Colo., August 5, 1903, and gave as his residence Gunnison, Colo. He served in the Civil War in Company K, Fourth Infantry; was adjudged insane March 26, 1904; died July 3, 1910; pension, $12 per month. It is agreed and stipulated that the above statements of facts shall be introduced as evidence by either party, plaintiff or defendant, in the respective case to which they apply, and the court shall consider them as such. It is further agreed that, in case the court make any allowance, the amount as shown by the bills filed by the state in each said case shall be the amount allowed by said court. It is further agreed that these cases shall be consolidated and tried at one time.

The trial court denied the claims of the state and of Marshall county and entered judgment in favor of Cole as guardian and administrator, respectively. The state appeals.

The statutes necessary to be considered in the disposi-tion of these appeals are as follows:

The provision herein made for the support of the in-sane at public charge shall not be construed to release the estates of such persons nor their relatives from liability for their support; and the auditors of the several counties, subject to the direction of the board of supervisors, are authorized and empowered to collect from the property of such patients, or from any person legally bound for their support, any sums paid by the county in their behalf, as herein provided; and the certificate from the superintendent, and the notice from the auditor of state, stating the sums charged in such cases, shall be presumptive evidence of the correctness of the sums so stated. If the board of super-visors in the case of any insane patient who has been supported at the expense of the county shall deem it a hardship to compel the relatives of such patient to bear the burden of his support, or charge the estate therewith, they may relieve such relatives or estate from any part or all of such burden as may seem to them reasonable and just. The estates of insane or idiotic persons who may be treated or confined in any county asylum or poorhouse, and the estates of persons legally bound for their support, shall be liable to the county for the reasonable expense, or so much thereof as may be determined by the board of supervisors. (Code, section 2297.)

All persons named in section twenty-six hundred and one of this act, not having sufficient means for his or her own support, who are disabled by disease, wounds, old age or otherwise, who served in Iowa regiments or batteries, or were accredited to the state of Iowa, or who have been residents of the state for three years next preceding the date of application, shall be eligible to admission into said home. Before admission such person shall file with the officer having charge of such home a certificate signed by the board of supervisors of the county in which such person resides stating that such person is a resident of such county. Such certificate shall be conclusive evidence of the residence of such person in all matters affecting the liability of the county with respect to the expenses of such person in case of insanity or any other cause for which the county may be

liable. If the applicant is entitled to admission and is not a resident of the state, a record shall be made thereof on admission. Nothing in this act shall be construed to bar any person from admission who is entitled to such admission under section twenty-six hundred and two (2602) of the Code.

Section 2602 of the Code is the same as section 2602 of the Code Supp. down to the word "home" in the seventh line of this quotation. Code Supp. section 2602.

When a member of the home is discharged therefrom, or voluntarily leaves the same, or is adjudged insane, his residence shall be that of the county in which he was residing at the time of his admission. (Code, section 2605.)

All money received by any person, a resident of the state, as' a pension from the United States government, whether the same shall be in the actual possession of such pensioner, or deposited, loaned or invested by him, shall be exempt from execution, whether such pensioner shall be the head of a family or not. (Code, section 4009.)

For the purpose of elimination, we also here quote chapter 98, Acts 34th G. A., section 1:

That the estates of all patients who are provided for and treated in state hospitals for the insane in this state but who are nonresidents of this state, and all persons legally bound for the support of such patients shall be liable to the state for the reasonable value of the care, maintenance and treatment of such patients while in such hospitals, and the certificate of the superintendent of the state hospital in which any nonresident is or has been a patient, showing the amounts drawn from the state treasury or due therefrom as provided by law on account of any nonresident patient, shall be presumptive evidence of the reasonable value of the care, maintenance and treatment furnished such patient.

1. ESTATES OF INSANE PERSONS: statutes.

This act did not become effective until April 1, 1911, and the claims now under consideration were presented in September of the year 1910; so that this act of the 34th G. A., which did not go into effect until some six months

after the decrees were entered in these cases, has no bearing upon the issues presented.

The claims presented against the defendant as guardian for Rood and Brockway were properly disallowed for the reason that the pension money belonging to the wards in the possession of their guardian is not liable to execution. In other words, such funds are exempt in the hands of their representative. *Manning v. Spry*, 121 Iowa, 191.

2. EXEMPTIONS: pension money.

The only statutes which are relied upon by the state or Marshall county, conceding it to be a party to the litigation, as a basis for the claims against the defendant as administrator of the two estates, are sections 2297 and 2291 of the Code. Section 2291 we have not quoted for the reason that it does not fix any liability, but simply relates to what shall be regarded as competent evidence of the amount to be paid by a patient in the hospital for the insane. Section 2297 does not, in our judgment, authorize recovery by the state, but only by the county, which is legally bound in law for the support of an insane person. It appears from the stipulation upon which the case was tried that Hackley was sent to the Soldiers' Home from Guthrie County, Iowa, and, if there be any right of recovery under section 2297, it must be by that county, and its board of supervisors, at its election, had the right to relieve the state from the payment of the expense for the keeping of the deceased in the insane hospital. We need not consider the question of the right of the state to recover because of the nonresidence of the deceased Ford, or because of the fact that Hackley also became a nonresident before his commitment to the insane hospital; for appellant's counsel make no claim in their argument that the state, as such, is entitled to recover. Its claim is "that Marshall county is entitled to have a claim for the expenses of keeping these two insane persons now deceased in the insane

3. INSANE PERSONS: maintenance: recovery by county.

hospital under section 2297 of the Code." Certain it is that, under the record now before us, Marshall county never expended anything for or on behalf of these two persons. The verified claims which were filed in the office of the clerk of the district court were in the name of the state of Iowa, and they were verified by the Auditor of State and were based upon certificates of the superintendent of the insane hospital. So far as shown, Marshall county has never been called upon to pay out anything on account of the support of either of these deceased soldiers in the insane hospital at Independence. Moreover, in the replies filed to the answers, the state expressly alleged that both Ford and Hackley, at the time they became members of the Iowa Soldiers' Home, were nonresidents of the state of Iowa. This averment was doubtless made in order to avoid the claim of exemption, but it seems to us that it is also destructive of the right of Marshall county to recover or have any claim allowed.

The trial court therefore did not err in refusing to establish the claims of Marshall county, for it had none to establish. This being true, it is unnecessary to consider the question of the exemption of pension money after the death of the pensioner.

The orders in each case are therefore *affirmed*.